Good morning, ladies and gentlemen, and as you can see, Judge Gould is joining us from Seattle. How are you, Judge Gould? Yes, I'm fine, thank you. Good morning. And we'll proceed to argument in the en banc re-hearing of Board of Trustees versus Chambers. From the appellant. Good morning, Your Honors. The panel majority in this case correctly found that this case is not moot, and then correctly found that ERISA preemption does not bar Nevada law. This is the only approach that both follows Supreme Court precedent and makes sense of the numerous cases in this Court that serve as precedent. It's also- Couldn't the panel have followed Northeastern Florida Chapter of Associated General Contractors versus City of Jacksonville come to the same result, but not, shall I say, unduly narrowed City of Mesquite? I'm not sure I understand exactly what you're getting at, Your Honor. In other words, the plaintiffs are still injured by this different bill. I think it's SB 338 continues to harm the plaintiffs, whereas the panel construed City of Mesquite very, very narrowly reaching a different result, but seemingly in conflict with some of our other precedents. Do you have a view about that? I have. Yes, I do have a view about that. I would say that, in my opinion, the panel majority correctly followed both City of Mesquite and Northeastern Florida General Contractors case. And that's because, as the Supreme Court has said, City of Mesquite is the controlling authority in voluntary cessation cases. The Supreme Court has not treated City of Mesquite as a rare exception to a blanket rule of mootness, as the dissent adopted. And in Northeastern Florida General Contractors, as well as the case of Friends of the Earth versus Laidlaw, the Supreme Court said that voluntary cessation cases are governed by City of Mesquite, and that, as a result, there's a presumption that those cases are not moot. Another similarity between this case and the Northeastern Florida General Contractors case is that the new statute that's been enacted, SB-338, retains some of the same problems that SB-223 did. And so, just as in Northeastern, the Northeastern case, this case should also be found not moot because those problems still linger. So what are those problems? Yeah, so those problems are that SB-338 re-enacts the statute of limitations limitation. And I'll point out that Apalis argued that anything less than a three to four year statute of limitations presented an irreconcilable conflict with ERISA auditing practices. Well, so 338 changed it to two years, right? That's right, yes. And SB-223 is one year. That's correct. So what do you mean when you say they re-enacted it? They didn't. They changed the statute of limitations. They amended it. Yes. You just used the word re-enacted. I don't mean to split hairs. I'm trying to make sure I'm understanding the position. They changed the statute in the way Judge Callahan described, yes? Yes. Much of the statute, however, was re-enacted word for word. It's just certain challenge provisions were repealed and certain were amended. So that gets back to Judge Fletcher's question. Which was? Some problems still remain and I just asked you which those were and you started out with statute of limitations. Yes. So statute of limitations is the obvious one. Before you leave that, though, why is that an issue in this case? It's not pled in the complaint. There's no statute of limitation live controversy. It became an issue because of, I believe, because of the district court's order, which ruled the entire statute SB-223 preempted. And so there's a two-year period where if your claim arose between 2015 and 2017, it's now somewhat unclear which statute of limitations. No, I understand that, but the statute, there's not a live controversy here with a party that is barred or not barred by the statute of limitations. So why is that ripe? I believe. That's just theoretical, isn't it? I don't think so because the appellees here challenged the statute as a facially preempted. So they challenged the entire statute. So that entire statute has gone away and I don't, I don't know. But where's the statute of limitation problem for anyone in this case? I understand it might be in a future case, but where's the statute of limitation problem in this case? In this particular case, there's actually no, no specific problems. But isn't that why it's entirely? It's facially preempted. So there's, the appellees don't have any specific issues with the statute that are currently, you know, in a court case going on. Statute of limitations falls into that. Right. So now that the, we have a new statute, why is that an issue here for us? It's an issue. The statute of limitations. It's an, it's an issue only in the sense that it's part, if it's not severable and it's part of the entire statute, the mootness analysis requires looking at how the statute actually operates now. And that leave SB-338 still leaves the same problems that SB-223 had implemented. How are you injured? How are you injured?  By the statute of limitations. No, there, there is a real injury because Nevada wanted to address the problems that contractors were having in these types of cases. And the statute of limitations was actually a central portion of this law. So this is a Nevada law granting vicarious liability to laborers, basically, to be able to get money, debt collection from general contractors. What was happening is the general contractors wouldn't receive notice of the suit or any idea that there was even a claim until years later. And then the parties bringing those claims would collect attorney's fees, would collect interest, potentially putting the general contractors out of business. So the statute of limitations being cut down to one year from three to four years was actually a central and crucial component of this law. Nevada has an interest in protecting its laws. It has an interest in protecting its citizens and its businesses. But you've changed that statute of limitations now, right? You say it was central, but you changed it from one year to two years. So we're fine going forward. You're just talking about the period from 2015 to 2017. Yes, if this court finds that, as our general rule, this case is moot, yes. Excuse me. When the state legislature enacted 338, the district court had vacated the SB 223, isn't that right? So the state legislature would have known there was a four-year statute of limitations. The old one was in place, and yet they didn't make the two-year one retroactive. So isn't it the state legislature's determination that the four years could stay in place for the 2015 to 2017 period? As a matter of practical effect, yes. But in this case, because we are arguing that this case is not moot, or in the alternative that the statute of limitations should be considered severable, we have an interest in maintaining a shorter statute of limitations, because it was such a crucial part of enacting But the state legislature would have contemplated, knew that it was a four-year when they didn't make the two-year retroactive along with the rest of the statute. They would have known that, yes. Okay, thank you. So it seems to me, just to kind of finish up on that, I took your point to be that there was, in response to Chief Judge Thomas' question, that there was uncertainty for this period of time between 2015, for the two-year period. But in the way that Judge Okuda is explaining, I don't see why there would be any uncertainty, because the legislature did not make that provision retroactive. There's uncertainty in the argument that we're presenting, that if the case is severable, or if the statute of limitations, excuse me, is severable, then, which we believe should be the case, if this court does not find the entire case not moot, or does not find the entire case moot, then there is that, we introduce that uncertainty. Can I ask you why you changed your position? You argued before the panel that the case was moot. With all due respect, it seems a little opportunistic. You got a decision you wanted, or that benefited you from the panel, and then you switched your position. This seems to be precisely the issue that confuses our mootness. We don't want parties to be gaming the system, and it comes across that way, to be honest with you. I understand that concern, Your Honor. I think the most honest way to explain that is that this court's law on mootness is very confusing, and we made an unfounded assumption about whether the case was moot. I'll point out that when we- So if it's murky. Yes, definitely. And I'll just be honest. It took me a while to read all those cases and understand the distinction that the panel majority was making. I don't think my colleagues entered that same level of reading the precedent and really comparing the factual differences. Well, let's assume if voluntary cessation does not deprive a court of jurisdiction, as the Supreme Court stated in the City of Mesquite, when there is some possibility of legislative action after a court invalidates a law, how does the court determine whether it should exercise its power to enjoin the defendant from renewing the practice? I mean, what's your suggestion? And if the case law is murky, to make it clearer, what should we get rid of? There's a few different- a couple of different ways to approach that, I believe, Your Honor. One is, you can look at how- you know, in this case, you look at the facts of the case. So if there's a replacement statute, one of the important questions to ask is, what does that replacement statute do? If that replacement statute completely replaces all of the allegedly problematic provisions of the initial statute, you can find that the case is moot, and that's the Hellercker case. If, on the other hand, the statute leaves in place some of the allegedly problematic aspects of the first statute, you find the case is not moot, and that is- those are the cases cited by the panel majority. But what are the problematic- then what are the problematic aspects of the first case that support this case not being moot? The problematic aspects are, number one, the statute of limitations. That's not problematic. But I know we got- okay. It's just not problematic. That's not problematic. So what is problematic? The notice provisions, then. But that was- I thought you agreed that that had already been replaced by the new statute. The new statute implements- no, we didn't agree to that. The new statute implements two notice provisions that are- essentially do the same thing as the notice provisions in SB 223. And I can point you to where those are. Section 4, subsection 7 of SB 223 was replaced in 338 with section 4, subsection 2. Sorry if that's getting a little confusing. But that seems so different from what you- that's what I'm- and I guess you've said you've evolved in your understanding here, but that's totally different than what you argued before the panel. Before the panel, you said the case is moot with one exception, the statute of limitations, which is not an issue. So now it seems like you're trying to grasp at straws. And we'll look at it. I mean, I'm happy to look at it. But I did not have the understanding that you ever made this argument before that there were differences in the statute that were problematic, or that were carried over into the new statute. I don't believe we made that argument, Your Honor. So that's never been made to the court. There's no briefing on this. This court has its own responsibility to look at mootness. Forgive me for interrupting. Yes. What is the answer to Judge Nelson's question? Is there briefing? No. We did not raise this before. Thank you. And I think that that illustrates why this court has an independent responsibility. Because the parties can be opportunistic. Well, I don't think that's- And they can get things wrong. I don't think that's totally fair. To be frank with you, this is a very complicated statute. We're relying on the parties to come before us. You came before us and told us this was moot. I don't think that our duty goes into assuming and trying to recreate on our own what could be a problem for the parties. The parties are in charge of telling us what's a case or controversy, and you told us there was no case or controversy. And now you've changed your position. Yes. I'm convinced by the panel majority's decision. But you never told us that. You didn't even write a letter making these arguments to the court. For the first time at oral argument, you're now telling us. And I mean, that's fine. We'll go back and do the work that we have to do. But you didn't even file a supplemental brief explaining these things to us. That's right. I'm relying on the panel majority's reasoning, which I find to be convincing and adequate. May I ask a question about the notice, your notice argument? And are you arguing now that the new statute, which notice argument are you relying on? Are you saying that we should strike down the old notice or retain the old notice provision or the new notice provision? I don't understand. When you say there's a difference between the statutes, how that matters here. Yeah. The same reasoning that the panel majority used in its own ERISA preemption analysis would not end up striking either SB 223 or SB 338. The notice requirements are quite similar. And the reasoning of the court that this is a state-governed right that we're giving, you know, to the ERISA plans and other labor parties is that we're not trying to impinge on ERISA. And that reasoning applies to both. I understand that argument, but you would agree that the new statute is not in front of us, correct? I do agree to that. I think we reached the new statute because of the mootness analysis. Let me ask you this, if I may, assume for purpose, I'm up here, assume for purposes of this question that the new statute entirely moots out the appeal, then the question is basically the mesquite question, what's the likelihood of Nevada re-enacting the old statute if we were to dismiss this appeal, that is to say, capable of repetition yet evading review, how likely is it that we will get repetition? That's a very difficult question to answer. Certainly, the Nevada legislature remains free to re-enact. The legislature in Nevada meets every two years, and the composition of that legislature tends to change every two years. I would assume that, and this is, you know, the party who's arguing mootness really bears this burden to show that this would happen, but certainly the Nevada legislature could do that. These interests still remain. But before the panel, you argued that there was no way that the legislature was going to do this, that they'd turn the corner, and now you've switched, and you're answering Judge Fletcher saying, well, it could always happen. What in the world are we supposed to believe from the statements that are coming out of Nevada on this case? I think that this case illustrates how difficult it is to predict what a legislature will do. Well, but why didn't you say that in the first place? You told us before the panel that there was no way that the legislature had put this to bed and decided it was wrong. Why did you say that if now you're coming up and saying, well, it's always on the table? Well, the best explanation I can offer is that the Nevada legislature did take out some of the more problematic references to ERISA trusts and plans. So while it imposed the same notice provisions, and as a matter of fact, the ERISA plans still have those same requirements, they're not specifically named in the statute. So in that sense, I think it is true that the Nevada legislature saw that it was probably an error in referencing the plan specifically because it made it look like they might be targeting them. But as a matter of fact, I still, despite your assertions, can't predict what the legislature would do in the future. I'm not sure why. Isn't that the death knell under Mesquite? Mesquite strikes me as a very fact-intensive inquiry, and those were very unique facts where the Supreme Court said it's virtually certain. Because the city in that case, the governmental entity in that case, said it was going to absolutely reenact. So if this is a fact-based inquiry and you can't predict, why aren't we in a position of saying, this is just entirely speculative, what's going to happen next? Or are there facts we should be looking to? I'm seeing them. The standard that the panel majority sets out, I think, is pretty usable. And here's what it does. So, counsel, just to be clear, that's not my question. My question is, under Mesquite, which I think is a fact-based inquiry, what are the facts here that tell us this is anything other than speculative, that this step will be taken by the legislature? This case matches the facts of Mesquite. Because the legislature threatened to do this? Because the legislature changed its law in response to an adverse court ruling. Is there any statement made by, over here, is there any statement made by the legislative body or individual legislators or other evidence in the record specifically indicating that the state legislature will reenact 223? No. There's not. Because those are the facts in Mesquite, right? Those are the facts in Mesquite, but I don't think they were completely determinative in Mesquite. The problem for me in reading Mesquite is that we've got footnote 11, in which the court says in oral argument, we were told that the city council has announced its intention to go back to its old ways. But we have in the text, this is now the text of City of Mesquite, there is no certainty that a similar course would not be pursued, which suggests that the test is we need to be certain that it won't be reenacted. So in a way, my quarrel is with the United States. Tell me what you really mean. Is it simply fact-bound, or is it something, unless we can be absolutely sure the Nevada legislature is not going to reenact, then it's not moving. I'm having just trouble figuring out what the court's telling us. I would say in answer to that question, that this court can look to the later Supreme Court cases that cite City of Mesquite. Because they, that's Laidlaw and the Northeastern Florida case. Because they don't rely on those specific facts of someone admitting at oral argument that they're going to continue the problematic behavior. Instead, they say City of Mesquite is the controlling precedent in voluntary cessation cases. And that is what we have before us. Counsel, one of the challenges in this case is the so-called problematic behavior the panel concluded was not problematic at all. That's right. Why wouldn't the legislature just reenact 223 since a panel of this court has said it's free to do so? That may well happen, Your Honor. And in that case, I've. And if they're now free to do so because we told them that they're free to do so, is that a bit of a self-fulfilling prophecy since they may do so, then it makes the case not moot. I don't understand the last part of what you're asking, if that was a question. Well, if it, in other words, because we've told them they're free to go, we've given them the green light to reenact 223. And if they're free to do so, then maybe we should presume that they will do so since we told them they can do it. That. And if so, then the case is, I mean, the whole thing ends up being a little circular. I agree. This is an odd case. And I had a lot of difficulty preparing for that reason because it really does involve a lot of murkiness, a lot of issues that are unclear both from the Supreme Court and from this court's precedents. Let me ask you a question that might help over here. Sure. Let's assume that Nevada had never passed this law, ever, but it looked like it was going to pass. The governor was in favor of it, the legislature was in favor of it, but it actually had not technically passed. But it looked reasonably certain that it would. Under your view of mootness, could a party file a lawsuit saying, well, I think next week they're going to pass the law, and therefore, it's likely it's going to pass, so therefore we have Article III standing to challenge it? I believe that's what happened in the no-attack line of cases. And so in that case, because the law was changed before, well, actually that may not be true, right? I'm saying there's no law in the books. There's no law. No law in the books. But it looks pretty certain there's going to be one. Pretty certain. The Vegas odds in Nevada say that this law is going to pass. In that instance, could you file a lawsuit, would I have Article III standing because I'm saying I think next week there'll be this law? Because I don't see how that's really any different than this situation. I'm not sure I know the answer to that. Well, it seems to me, under your theory, it's got to be yes for both, because in both instances you're saying the law's not there now, but I think it's going to be, and therefore, we have Article III standing. Then I guess I would say yes, but by the time, I don't think you can get stand, I don't know. I think the issue is, the difference in that is you're looking at standing, and here you're looking at mootness, and it's... Well, in both it's whether there's really a case or controversy here. Correct. But if you're looking at standing and there's no law that's influencing you at all, I'm not sure you could file a suit and have standing. However... What law is influencing now? Well, okay, so right now, I think one of the issues is that you have a similar law, 338, that imposes things that are very similar to what the district court found were preempted, and that still affects... But you keep saying it's a similar law, and yet that's totally contrary to what you told the panel. So, you've given us the, well, first of all, go ahead and answer his question, and then I want to ask a follow-up. And so, when you're looking at mootness, and I think the Friends of the Earth case explains this pretty well, the difference between standing and mootness. So when you're looking at mootness, it's one of the factors you look at in a voluntary cessation case, is you then look at the new statute. You don't look at it because you're deciding the new statute, you're looking at it solely to make the inquiry as to what exists now, and will the legislature reenact a wrongful statute? In this case, it's not wrongful, so that's another thing in the mix there. In this case, it shouldn't be preempted. Is there any question that SB 338 was enacted in response to the litigation involving SB 223? There's no question as to that, because the legislature specifically said that's why it was doing it. Under the circumstances, under northeastern Florida, since that was the purpose, and they did enact things, there are certain provisions, like the statute of limitations, like the notice provisions, and so on, that are somewhat similar to what was there before, and arguably have an impact on the plaintiffs, isn't that enough to defeat mootness? Yes. We would have to decide under northeast Florida that the statute actually impacts them in the same way. Yes. And so, what's your best shot that it impacts them in the same way? As Judge Nelson said, that's new news to us. Because the only difference is that instead of referencing ERISA trusts and plans, it says potential claimants under NRS 108 point, I forget the exact citation, but that's really the only difference. Well, actually, it's not the only difference. Well, in the two notice provisions. Of course, there are other differences between the two. But as far as similarity, you've mentioned the notice provisions. What else is similar in this case, then? Or excuse me, between the two statutes, 223 and 323? I think those are the three things, the statute of limitations and the two notice provisions. And I'll just make the point that I fully expect that if this court were to find this case moot and withdraw the panel majority's opinion, we'll be back here in a few years because they will sue on SB 338. Well, let me ask you this. Fairly certain. And then we would have briefing on the new statute. Yes. Yeah. So what you're asking for is an advisory. Let me ask you this. But it will be the same issues. The panel majority. Oh, it might be. We'll be guessing. We don't know that. In my, that's my opinion. Since I'm the only one here in the panel majority that maybe, let me ask you this. Do you find, okay, so the City of Mesquite is a Supreme Court case. And, and in terms of the murkiness of, do you find that Carreras, Log Cabin, Republicans and Hellecker provide some inconsistencies with the City of Mesquite? I think that they create confusion partly because of the broad language used in some of those opinions. However, when you really dig down into them, they, they are all distinguishable. So the line of cases that includes Carreras, Coral. Well, I know that I did that. Yeah. Okay. But that being said, if we didn't have that confusing language that could be looked at either way. I think things would be a lot clearer. I mean, and part of the concept of if you say something is moot, then it doesn't allow panels to go and express things maybe where they don't need to, you know, to kind of put the kibosh on it going forward, which I, I basically agree with that concept. But I mean, should we, if we don't, if we want to have a clean mootness standard, should we just get rid of that confusing language in the other cases and go back to City of Mesquite? I agree with that. And I think the dissent agreed with that as well. It said that unless there's an en banc decision that clarifies the situation, Judge Wallace would have found this case, found this case moot. So I think that that is supported both by your opinion and, and by the dissent. But Judge Wallace didn't say that because he'd go back to Mesquite. Judge Wallace viewed Mesquite as the exception, not the general rule. Yes. And I think that was an incorrect understanding of Mesquite based on the Supreme Court's own cases interpreting it. You're down to about two minutes. Do you want to reserve? I would love to. Thank you. May it please the court. Good morning, your honors. Bryce Loveland on behalf of plaintiff's appellees with me at council's table is Chris Humes and Wes Smith. We, I will be doing the entirety of the argument today for the plaintiff appellees. The offending parts of the amendment that were created and now completely revoked by the Nevada legislature did not impose preconditions on state created collection statutes. They instead imposed mandatory reporting and disclosure obligations on a risk only plans and their employers. That's why the district court got it right when it granted summary judgment for the plaintiffs and why the district court's decision should be affirmed. However, as has occurred here in the last 30 minutes and because the crux of the complaint has disappeared, the case itself, the appeal itself is moot. So do you intend to challenge 338? We do not, your honor. I can count on that. I won't be seeing you back when they say there's a comeback case on this. If we had a challenge to it, we would have already challenged to it. Okay. The Nevada legislature enacted SB 338, which changed the statute of limitations to two years up from SB 223's one-year statute, right? So does the voluntary succession exception allow the board to challenge SB 338 statute of limitations in this action or must you file a new action in the district court? Your honor, the statute of limitations issue on its own is not an issue. What the Nevada legislature did when it amended Senate Bill 223 and completely revoked the offensive provisions is it did just that. It revoked the offensive provisions. It returned the general . . . So there's not a preemption issue with 338? There's not, your honor. Even though this is a facial challenge? I apologize, your honor. Even though your claim initially was a facial challenge to the statute, right? It was a challenge to the totality of the amendment. The amendment targeted . . . Right. A facial challenge. You're not taking particular instances. No. So it's not a . . . In other words, it is a facial challenge, right? Right, your honor. Yes. Yes. I'd like to ask a version of Judge Bybee's question, which is this comes to us in a very odd setting. It's already odd, and then it gets odder. The ordinary way in which these cases come up, if they come up at all, is that there is a district court holding that says that the statute is unconstitutional or invalid for some reason. While it goes up on appeal, the legislature or the city council, whoever it is, is the law-enacting body, repeals it or changes it, thereby at least attempting to make it moot in order to avoid . . . if it really is moot, and I'm attributing a little bit of sort of scienter to this, in order to avoid the appeal. And then the question is, well, what's the likelihood of continuing opposition? But here we have an additional step. The panel has already said now that the statute's perfectly constitutional or there is no preemption, which is Judge Bybee's question, so that if the panel's right on the merits, and if the Nevada legislature thinks now what it thought before, and in some ways it's a perfectly sensible, perfectly understandable statute, why does that not tell us it's very likely, in fact, that they'll go back and do it because the three-judge panel on the merits has told them it's perfectly okay, which gives us really quite a different posture than we had, for example, in the city of Mesquite. The narrative I just gave you may be the equivalent of footnote 11 in the city of Mesquite. At this point, Your Honor, if there's any uncertainty, if the Nevada legislature would reenact the offending provisions, that uncertainty is gone, because in the very next legislative session, the legislature revoked the offensive provisions on a retroactive basis. But that's before the decision on appeal, correct? Correct, Your Honor. And then the decision on appeal came out, September 4, 2018. The very next legislative session, this last session, 2019 session, began in February of this year and just concluded on June 4. During that time, the majority opinion was in place up until May 22 of this year. If the Nevada legislature wanted to reenact the offending provisions, they had the opportunity to do so, and the blessing of this Court's majority opinion to do so. Well, maybe, maybe not, but if I'm a legislator or I'm a staffer advising the Nevada legislature, I say, well, you've got a panel decision, but the thing's going en banc, or at least they're en banc proceedings, they may go en banc. You don't know yet. If we then dismiss this as moot, the only decision on the merits you've ever had then, or the Nevada's ever had, is that this is perfectly okay. Once they've got that, I think that's quite a different posture. Well, you would also still have the preamble of Senate Bill 338, which explained that there was a decision at one point by a district court that found it preempted. And then there was the decision on the merits by this panel saying that it was not preempted. And the hierarchy is, we win. But isn't that what you were arguing before the panel? You argued that the case was moot before you received the panel opinion that reversed the district court. So your position was it was moot then, even though you had won at the district court, and the panel should not have issued, in essence, an advisory opinion, which has created this conundrum now that the panel has signaled to Nevada that the statute could be reenacted. Correct, Your Honor. It was moot then, and it's moot now. The offensive provisions were removed. You see, the original amendment, Senate Bill 223, mandated that ERISA-only employers, any time they set foot on a construction project, had to notify their ERISA plans that they were there. That provision is gone. That's gone. Another provision, any time an ERISA plan administrator determined there was a delinquency by any ERISA employer, they had to notify that employer according to a complicated reporting scheme and disclosure scheme. This is state intervention in ERISA-governed reporting and disclosure, as well as infringement on ERISA-governed relationships. With Senate Bill 338, the offensive provisions were removed. What we had there was now you have an original contractor, an outside party. If they feel like something is owed, they can ask. And if the claimant, now a statute of general applicability, so if the claimant, including an ERISA plan, wants to take advantage of the original contractor statute, 608-150, then it could provide the amount that's owed. That is what was changed. And so you have now a statute of general applicability. Senate Bill 338 returned all those statutes, the lien statute, the vicarious liability statute, the public works statute, to statutes of general applicability. So you don't have this targeting of ERISA plans exclusively on one side. And then you also don't have the infringement on the ERISA-governed reporting and disclosure requirements. Let me ask you about the district court opinions. Since the panel opinion was reheard en banc, it now doesn't exist. The only thing we have is the district court opinion. If the en banc panel determined that the underlying case for challenging 223 is moot, what should we do about, in your view, should we do about the district court opinion? Should it be vacated under Munsingware or should it remain in place? That's a decision for this court. The cases talk about how it's an equitable decision. So this court can decide. Well, typically, if you want Munsingware vacation, you're supposed to ask for it. Do you want it vacated? We're okay with vacating. We would prefer... Who would like the district court opinion? We like that decision. We'd love it to stay. But we understand where the cases lie on that issue, Your Honor. I didn't get the answer to my question as to whether you were asking for it. Maybe you don't want to say it one way or the other. He said he was fine with it, but he really would like it. Yeah. Okay. I got it. Can I ask a question? If we find this case to be moot, it seems to me we've got a job before us on how to write that. And I think it would be helpful to get your perspective on that. Like the NOAA talk case, which seemed to be what Judge Wallace relied on, it seems to me that that is also an outlier of other circuits and how they've approached mootness, or at least the statement that was used in that to require that it's virtually certain that the repealed law be reenacted, that almost makes everything moot. Do you think that there's a middle ground? What cases do we need to revisit, is my real question? The rule was established in Crimmins, and then there's exceptions to the rule. Is it virtually certain the repealed law will be reenacted? The... But would you agree that that standard in and of itself creates too high of a standard and would moot out too many cases if we replied that literally? I think log cabin Republicans did a good job of distinguishing the cases that lay out the exception. So that would be a case I would look at. There are instances where there... Go ahead, please. There are instances when there is continuing harm or likely continuing harm to the plaintiff. Here we are in a unique situation where the plaintiff is coming to you and saying, we're not harmed anymore. We don't seek the protection, the judicial protection that we originally sought. If Crimmins states the general rule and Mesquite is the exception, I'm wondering about... Mesquite, of course, we've talked about that really unusual facts or is virtually certain there had been a sort of promise or a statement that the offending provision would be reenacted. But there's also the Florida case, Judge Smith and I are using different names for it. Northeastern Florida is, I think, the way he's referring to it, just to make sure we're on the same page. And I read it as a possibility also, but also very fact-intensive. But it would require us deciding that the new provisions enacted in Nevada, and this is my question, do you agree, that it would require that we make a finding that the new provisions enact the members in the same way. That's the threshold question that I want to ask you. Right. So the Northeastern Florida case was where they reenacted or the new provision still had the same harm. But in that case, the plaintiff was still saying, I'm harmed, I need protection here. Well, and yes, I agree. But further, the court there said that the new provisions don't fix anything, they harm you in the same way, and it strikes me that that would be a very problematic issue for us to reach without, given the State's new position today. Well, our position is that we're not harmed. And it was the same position two years ago, before the majority opinion came out. We're not harmed by Senate Bill 338. And as I mentioned, it no longer targets arrest of plans exclusively, it returned those statutes to statutes of general applicability. Okay, but go back up, if you would, to the decision tree. If Cremins is the general rule and Mesquite is the exception, do you agree with the case that Judge Rick Smith is referring to as Northeastern Florida, do you agree that that also sets out an exception, if we could find that new provisions impacted plaintiffs in the same way? Yes, yes. That creates an exception. And I appreciate you're saying that that's not you, you're not in that vote, but I just wanted to make sure that I understand your view of the law, and I think you've answered my question. Thank you. Does it matter that the plaintiff says it's no longer damaged if it's a facial challenge and it could affect others in the same way? Does it have to be the same plaintiff that claims damage? Well, this isn't a class, it's just us here. I'm just asking whether that, is that enough to do it in, as far as mootness is concerned? I don't believe so, Your Honor, and the reason why, we can go back to the Friends of the Earth case, the Laidlaw case that was cited earlier. There's a line in that case from the U.S. Supreme Court in 2000 that says, courts have no license to retain jurisdiction over cases in which one or both of the parties plainly lacks a continuing interest. And we saw the same rule being applied. An interest in the sense that they believe they are harmed? Is that what they mean? I'm not exactly sure, Your Honor. But in a facial challenge scenario, we'd at least have to determine that the statute works the same way or works the same hard regardless of who the plaintiff happens to be, wouldn't we? Wouldn't we have to examine what the new statute does? You could. But you're not making a facial challenge to the new statute, are you? We're not. And so, I would go back also to the Gator.com Corp case, which was an en banc decision by this court in 2005. And that decision quoted that same language from Laidlaw. In that case, you had two parties who had settled. And there was concern about continuing harm because there was, from one side, there was something about a $10,000 settlement that was at risk because of the decision. But in any case, the majority of that panel said that this case has settled and you don't have a party or parties that are still interested in this case. And that's what we had two years ago. We had a state was saying they're not interested in this case with the exception of one piece. And we were saying we're not interested in this case at all. So those are the cases I would reference this court to. What about our line of cases that say that mootness, it's at least a factor in mootness, and I think the panel majority put it as more than a factor, where the statute is amended after an adverse decision below. How much of a factor should that play? It seems to me that it must play some factor in the mootness analysis. I'm not sure that I'm convinced that it needs to play as much as the panel majority relied upon. Where should that play and what cases do we look to to determine what kind of credibility we give to that factor? I would go back again to log cabin Republicans. That case distinguishes, it lays out the rule, which is the Crown's rule, and then it lays out all the exceptions. And it cites to the City of Mesquite case as one exception, but it also cites to other cases from this court. Coral Construction was one where the district court had upheld the challenged ordinance allowing the county to reenact its earlier ordinance. That's different from this situation, but in any case, to answer your question, I would go back to that case. I want to go for a minute to the SB 338. I'm looking at the Legislative Council's digest. I recognize, of course, that's not part of the statute, but in its comments, the Legislative Council makes specific reference to the district court opinion that you really liked, in which case the district court found there was preemption. And it indicated, this bill sets forth amendments that would prevent the provisions of law amended in Senate Bill 228 from being preempted. What role, if any, should that statement by the Legislative Council play in our analysis of, say, mootness? I think it plays to the Legislature's intent, which was to not reenact offensive provisions going forward. They not reenact? Not reenact the offensive provisions going forward. Offensive insofar as risk is concerned, but not necessarily vis-a-vis you and the plaintiffs, right? Correct. So in every case in which there has been an adverse ruling or a ruling that a challenge statute is unconstitutional, and then in response, a state repeals that statute, if the factor that the statute was repealed is determinative, that would mean that in every instance, those cases present a life controversy. They're not moot. So it would seem that that factor alone cannot be what's determinative, the fact that the statute has been repealed and that the Legislature presumably has the authority to reenact it. So what else should we consider? Need to look at the unique facts of each case. And I think that's what we see in log cabin Republicans, is they have this rule, and then they look at the unique facts of other cases that are an exception to that rule. Here, this case doesn't meet any of those exceptions, because you have a plaintiff who's not continuing to seek judicial protection. You know continued harm under ERISA because the offensive provisions were removed. And the Legislature has done an about-face as to ERISA preemption and has done its best to remove those offensive provisions on a retroactive basis. And we had this last session where they did nothing. So trying to prove virtual certainty that the Legislature won't reenact the offensive provisions, I don't know how you prove that, but we're as close to as certain, I think, as you can get at this point. Do you think you have more certainty now than you did when we initially issued the majority? Because of the failure to, because they didn't do anything this session, which just happened subsequently or? I believe so, yes. Is there an Article III problem if a party is before this court and says that they have no interest in the dispute, that they're not harmed, but that party would be the one advancing the interest of others who are not present? I guess it's a Friends of the Earth versus Laidlaw question. We have no actual controversy here. The plaintiff and the defendant at one point both agreed, with the exception of one issue, this was moot. I think we have your argument in hand, but I don't want to deter you from saying anything further that you want to address. Well, I appreciate the Court's time and consideration to these issues. You know, ERISA was passed to minimize administrative requirements. Senate Bill 223 was really bad for that. I mean, they imposed these administrative requirements on plans exclusively that infringed on their record-keeping and disclosure requirements. The District Court's decision should have been affirmed, but as I said at the beginning, we don't really need to get there because the crux of the complaint was completely removed with the retroactive revocation of the offensive provisions. Thank you, Counsel. Thank you. Just a few items, Your Honors. First, Counsel for Appellees mentioned log cabin Republicans. I would note that log cabin Republicans is unlike this case in the sense that that statute was completely repealed, leaving no problematic issues. Here in this case, it's our position that SB 338 does retain notice provisions which are problematic. The only challenged provisions that were actually removed were the definition of damages. But the plans here, the appellees, they still have to provide the same notice that they challenged under SB 223. They also still have to receive the same notice from contractors and keep track of that. They're still barred from filing lawsuits if their notice is not timely, something else they challenged in SB 223. He just said they weren't going to challenge this new statute. I still maintain that it contains some of the aspects that they previously did challenge and argued against. And they do still have obligations under 338 that are the same as those they challenged. I think they're not, to the extent they don't challenge it, it's because of the repeal of the damages because it now includes attorney's fees. That was something that 223 took out. Do you have a single case in which a court has found the case was not moved when the party says we're no longer damaged? And since forcing the plaintiff to litigate even though they don't want to? I do not, Your Honor. It's my position that Nevada remains damaged here. Right, but you didn't file a counterclaim, right? No. No. So you don't have anything, at least at this stage of the pleadings, that's at issue, right? No. What's at issue for us is defending Nevada's laws. It's at issue for us to defend the general contractors who wanted this law. And finding this case moot would only continue the confusion of this case, this court's precedences on mootness. So we ask that the panel majority opinion be adopted. One final question. I assume that if we find the case is moot that you would be requesting a vacation of the district court order under Munsinglar? Yes. It would be quite inequitable to force Nevada to labor under an incorrect district court opinion. Thank you, Your Honors. Thank you very much. Thank you both for your arguments today and for coming to San Francisco. And we will be in recess.
judges: Thomas, W. Fletcher, Gould, Bybee, Callahan, M. Smith, Jr., Ikuta, Christen, Owens, R. Nelson, Bade